IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| KAREN TAYLOR BAGHERI, ADMINISTRATOR OF THE ESTATE OF SHAWN MATTHEW McKEE, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14CV00077 |
| v. | ) ) | **OPINION AND ORDER** |
| DWIGHT L. BAILEY, M.D., ET AL., | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*S.D. Roberts Moore, Anthony M. Russell, Benjamin D. Byrd, and Andrew M. Bowman, Gentry Locke, Roanoke, Virginia, for Plaintiff; James N. L. Humphreys and Jimmie C. Miller, Hunter, Smith & Davis, LLP, Kingsport, Tennessee, for Defendant Appalachian Emergency Physicians.*

In this diversity action, the plaintiff Karen Taylor Bagheri, the Administrator of the Estate of Shawn Matthew McKee ("McKee"), seeks recovery from the defendants, including Appalachian Emergency Physicians ("AEP"), for alleged malpractice associated with medical care McKee received at the Emergency Department of Russell County Medical Center ("RCMC") in Lebanon, Virginia. AEP has moved for summary judgment. AEP asserts that the defendant Dwight L. Bailey, M.D. ("Dr. Bailey") — McKee's treating physician — was an independent contractor, thus precluding any claim for vicarious liability against AEP. For the following reasons, I will deny AEP's motion.

I.

The following facts are taken from the summary judgment record and unless otherwise stated, are not disputed by the parties.

The decedent McKee went to the RCMC Emergency Department on June 7, 2013. Dr. Bailey was McKee's treating physician. McKee was discharged the same day with a diagnosis of acute bronchitis. On June 25, 2013, McKee died as a result of pulmonary artery thromboembolism and bilateral pulmonary infarcts. The plaintiff asserts that medical malpractice was the proximate cause of McKee's death. More specifically, the plaintiff alleges that Dr. Bailey should have diagnosed and treated McKee for either a pulmonary embolism or suspected pulmonary embolism, and not acute bronchitis.

AEP is a Virginia corporation that "provides physician staffing for the emergency departments of its hospital clients including . . . Russell County Medical Center." (Independent Contractor Physician Agreement 1, ECF No. 30-1, hereafter the "Agreement.") AEP entered into the Agreement with Dr. Bailey, requiring him to provide "medical services in the field of emergency medicine" at RCMC. (*Id.*) In addition to his work at the RCMC Emergency Department, Dr. Bailey maintained an independent family practice in Russell County, Virginia. Dr. Bailey's independent medical practice is referred to as "Family Health Care Associates, P.C." (AEP's Mot. for Summ. J. 2, ECF No. 30.)

According to the Agreement, AEP required Dr. Bailey to perform, in part, the following duties and responsibilities:

    (1)   <u>Coverage</u>. Provide emergency department coverage by being physically present at the emergency department of the Hospital at such times as scheduled by AEP . . . ;

    (2)   <u>Evaluation and Treatment</u>. Evaluate, examine and treat each patient presented for care at the Hospital . . . ;

    (3)   <u>Supervision</u>. Supervise physician extenders as requested by AEP and, as requested by AEP from time to time, enter into written practice protocols with such physician extenders addressing supervision requirements and scope of practice matters;

    (4)   <u>In-House Emergencies</u>. Respond to all the Hospital in-house emergencies and respond to all "codes" within the Hospital, provided there is no conflict with patient care in the emergency department of the Hospital;

    (5)   <u>Service Contracts</u>. Take all actions necessary to comply with the terms of AEP's service contract with the Hospital in providing professional services at the Hospital. Without limiting the generality of the foregoing, the Physician specifically represents and warrants that he/she will maintain all qualifications required of physician providers thereunder and the Physician shall comply with all federal, state and local laws, rules, ordinances and regulations, with the Bylaws, Rules and Regulations of the Medical Staff and with the Code of Conduct and other policies of the Hospital.

(Agreement § I.A, ECF No. 30-1.)

The Agreement required Dr. Bailey to exercise independent medical judgment, but did not prevent AEP from:

(1) promulgating general rules governing the rendering of medical care to patients; (2) promulgating specific rules for the purpose of utilization and peer review; or (3) relieving the Physician of the care

of an individual patient or of all patient care when, in the opinion of AEP, inappropriate care is being rendered by the Physician or the Physician is not observing such general and specific rules.

(*Id.* § I.H.)

Regarding scheduling requirements, the Agreement states that the "[s]cheduling of the Physician services shall be by mutual agreement between AEP and the Physician." (*Id.* § I.B.) As general guidelines, the Agreement requires equitable allotment of night, weekend, and holiday hours, and alludes to an undefined, but minimum number of working hours. (*See id.* § I.B(1)–(2).) More generally, Dr. Bailey states in his Affidavit that he would inform AEP of his availability, and AEP would schedule him accordingly. (Bailey Aff. ¶ 4, ECF No. 30-1.)

As compensation, AEP was required to pay Dr. Bailey an hourly wage for each hour of professional services rendered, with AEP providing a Form 1099 on an annual basis.[1] Dr. Bailey was not entitled to any employee benefits, except that at his "own cost and expense, [he] may elect to participate in the health and dental insurance plans and physician self-directed IRA that AEP makes available to its independent contractor physicians." (*Id.* § II.B.) Under the Agreement, however, AEP was required to provide Dr. Bailey with malpractice insurance at its own cost.

---

[1] Pursuant to the Agreement, "[a]ll professional fees generated by the services performed by the Physician . . . shall be considered AEP's revenue." (Agreement § II.D, ECF No. 30-1.)

-4-

Lastly, the Agreement contains the following specific provision designating Dr. Bailey as an "Independent Contractor":

> AEP and the Physician acknowledge that, in performing services under the terms of this Agreement, the Physician is functioning as an independent contractor. As such, the Physician is not an employee of AEP. AEP shall not withhold any taxes and the Physician shall be independently responsible for all taxes and insurance and thereby shall indemnify AEP for any and all liability therefore. The Physician shall not have any claim against AEP under this Agreement for vacation, sick leave, retirement benefits, workers' compensation, disability or unemployment benefits, or employee benefits of any kind.

(*Id.* § II.C.) According to his Affidavit, Dr. Bailey did not view himself as an employee of AEP. (Bailey Aff. ¶ 5, ECF No. 30-1.)

II.

Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Id.* at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In its Motion for Summary Judgment, AEP asserts that it cannot be vicariously liable in this case because Dr. Bailey was an independent contractor, and not an employee of AEP. Under Virginia law,

> [t]he doctrine of *respondeat superior* [or vicarious liability] imposes liability on an employer for the negligent acts of its employees. If, however, the negligent acts were performed by an independent contractor rather than an employee, no master-servant relationship exists between the contractor and employer, and the employer is not liable for the negligent acts.

*McDonald v. Hampton Training Sch. for Nurses*, 486 S.E.2d 299, 300–01 (Va. 1997). In general, "whether a person is a servant or an independent contractor is a question of fact for a properly instructed jury. When, however, the evidence admits of but one conclusion, the question is one of law." *Hadeed v. Medic-24, Ltd.*, 377 S.E.2d 589, 594 (Va. 1989).

> As noted by the Virginia Supreme Court,
>
> [t]he factors which are to be considered when determining whether an individual is an employee or an independent contractor are well established: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual. The fourth factor, the power to control, is determinative. . . . This factor refers to control over the means and method of performing the work. . . . It is immaterial whether the employer exercises this control; the test is whether the employer has the power to exercise such control.

*McDonald*, 486 S.E.2d at 301 (citations omitted); *see also Richmond Newspapers, Inc. v. Gill*, 294 S.E.2d 840, 843 (Va. 1982) (stating that power of control is the

most significant factor and that "other factors merely help to elucidate the manner and degree of control").

In sum, AEP contends that Dr. Bailey was an independent contractor, because he exercised independent medical judgment in treating patients at RCMC and they looked to him "only for results" in this regard. (AEP's Mot. for Summ. J. 3, ECF No. 30.) Historically, there is some merit to AEP's argument regarding services performed by physicians. For example, as stated by one court, "[i]n the past, Virginia courts held, as a matter of law, that physicians could not be employees, on the grounds that a physician's professional skill and judgment is inherently not susceptible to external control." *Mann v. Sentara Hosps., Inc.*, 59 Va. Cir. 433, 444 (Va. Cir. Ct. 2002). However, the Virginia Supreme Court's ruling in *McDonald* abandoned such a rigid approach, resulting in the exercise of professional judgment being merely a factor in evaluating an employer's power to control the means and method used to perform work by a physician. *See McDonald*, 486 S.E.2d at 303; *cf. Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) (noting that there is competition between hospitals and physicians regarding work performance because of the duty each has to properly discharge their independent responsibilities).

In this case, the summary judgment record contains facts cutting in favor of both parties. For example, AEP and Dr. Bailey's apparent intent to create an

-7-

Case 1:14-cv-00077-JPJ   Document 35   Filed 06/22/15   Page 7 of 9   Pageid#: 158

independent contractor relationship supports AEP's position that Dr. Bailey was not an employee. *See Richmond Newspapers*, 294 S.E.2d at 843-44. Similarly, Dr. Bailey's ability to exercise independent medical judgment in treating patients at RCMC is evidence that he may have been an independent contractor. *See McDonald*, 486 S.E.2d at 303. In contrast, however, AEP's apparent ability to exercise some degree of control over scheduling; its right to impose general rules for patient care; and its provision of malpractice insurance and elective benefits supports the possibility that Dr. Bailey was an employee. *Cf. id.* at 304 (highlighting reimbursement of some physician expenses, including malpractice insurance, restrictions on performing work for other employers, and requiring compliance with hospital rules). Working for wages is also an indicia of an employee, *Richmond Newspapers*, 294 S.E.2d at 843, and Dr. Bailey agrees that he was paid by the hour, without regard to the services he performed. (Bailey Dep. 19, ECF No. 33-1 ("It didn't make any difference whether I saw ten patients an hour or none.").)

In short, the facts do not lead to a single conclusion in favor of AEP, particularly when all facts and reasonable inferences must be drawn in favor of the non-moving party for purposes of summary judgment. At a minimum, AEP's reliance on *Atkinson v. Sachno*, 541 S.E.2d 902 (Va. 2001), is misplaced, because this case does not present a strictly legal determination based on a governmental

entities' engagement of a private practice physician to prepare medical eligibility reports for applicants seeking disability benefits. *Id.* at 903–906. As a result, this issue must be decided by a fact finder after presentation of the parties' evidence. *See McDonald*, 486 S.E.2d at 304; *Hadeed*, 377 S.E.2d at 595. For these reasons, AEP is not entitled to summary judgment.

III.

For the foregoing reasons, it is **ORDERED** that AEP's Motion for Summary Judgment (ECF No. 30) is DENIED.

ENTER: June 22, 2015

/s/ James P. Jones
United States District Judge