IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| KAREN TAYLOR BAGHERI, ADMINISTRATOR OF THE ESTATE OF SHAWN MATTHEW MCKEE, DECEASED, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14CV00077 |
| v. | ) ) | **OPINION AND ORDER** |
| DWIGHT L. BAILEY, M.D., AND APPALACHIAN EMERGENCY PHYSICIANS, | ) ) ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*S.D. Roberts Moore, Anthony M. Russell, Benjamin D. Byrd, and Andrew M. Bowman, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Plaintiff; James N.L. Humphreys, and Jimmie C. Miller, Hunter, Smith & Davis, LLP, Kingsport, Tennessee for Defendants.*

In this diversity action, the plaintiff, Karen Taylor Bagheri, Administrator of the Estate of Shawn Matthew McKee, seeks recovery for the decedent's death, which she claims was caused by the medical malpractice of the defendants, Dwight L. Bailey, M.D., and Appalachian Emergency Physicians. The defendants have moved to dismiss, arguing that this court does not have subject-matter jurisdiction because all of the parties are citizens of Virginia. The plaintiff contends that the deceased was domiciled in Idaho at the time of his death, thus establishing diversity of citizenship.

The Motion to Dismiss has been briefed, argued, and is ripe for decision.[1] For the following reasons, the Motion to Dismiss is denied.

I.

Federal courts have subject matter jurisdiction over claims not presenting a federal question when the amount in controversy exceeds $75,000 and no plaintiff is a citizen of the same state as any defendant. *See* 28 U.S.C. § 1332(a).

Pursuant to Rule 12(b)(1), a defendant may challenge federal subject matter jurisdiction in two ways. *See Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may attack the face of the complaint and contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In evaluating a facial challenge to subject-matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* Second, a defendant may attack subject-matter jurisdiction as a matter of fact and argue "that the jurisdictional allegations of the complaint [are] not true." *Id.* Under those circumstances, a plaintiff receives less procedural protection, and "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond,*

---

[1] The parties declined to present any evidence at the hearing, relying solely on the evidence previously submitted in connection with the motion.

*Fredericksburg & Potomac R.R. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). "The party asserting jurisdiction bears the burden of proving it exists once jurisdiction is challenged." *Pasquotank Action Council, Inc. v. City of Va. Beach*, 909 F. Supp. 376, 382 (E.D. Va. 1995).

When an administrator of an estate brings a claim on behalf of the decedent, the administrator is deemed to have the same citizenship as the deceased for diversity purposes. 28 U.S.C. § 1332(c)(2).

II.

The facts in the record are essentially undisputed. It is the conclusion to be drawn from those facts that is at issue.

On June 7, 2013, Shawn Matthew McKee arrived at the Russell County Medical Center Emergency Department in Russell County, Virginia. Mr. McKee was suffering from, among other things, chest/back pain, shortness of breath, nausea, and a fever. Defendant Dwight L. Bailey, M.D., examined Mr. McKee while he was in the emergency room. Dr. Bailey performed a number of diagnostic tests on Mr. McKee, and eventually concluded that Mr. McKee was suffering from acute bronchitis. Dr. Bailey released Mr. McKee from his care that night.

On June 12, 2013, Mr. McKee and his wife, Jessica McKee, along with their two children, began the process of moving from their home in Lebanon, Virginia,

to Post Falls, Idaho. The family moved largely because Mrs. McKee had recently lost her job. They chose Post Falls because Mrs. McKee's mother and brother lived there, and because Mr. and Mrs. McKee believed the area offered better employment opportunities than the Lebanon, Virginia, area.[2]

Ultimately, the family arrived in Idaho on June 16, 2013. They moved their belongings into Mrs. McKee's mother's home, having reached an agreement to live with her while the family established itself in Idaho.

Thereafter, both Mr. and Mrs. McKee began searching for employment. When filling out job applications and tax forms, both of the McKees listed Idaho as their place of residence. On June 21, 2013, both Mr. and Mrs. McKee interviewed with Qualfon, a call center, and were subsequently offered customer service positions with that company.[3]

On June 25, 2013, Mr. McKee began to suffer from shortness of breath. Paramedics eventually took him to a nearby hospital via ambulance. Unfortunately, Mr. McKee became unresponsive around the time the ambulance

---

[2] The family's belief that Idaho presented superior employment when compared to Virginia was fueled, in part, by an offer of an interview that Mr. McKee received for a position with a U.S. Bank call center in Idaho. Mr. McKee was not able to travel to Idaho for the promised interview, but before he left Virginia he secured another interview for the same position, which was to have taken place on June 23, 2013.

[3] There appears to be some dispute among the parties as to whether Mr. McKee had officially accepted this offer of employment and was considered an employee of Quaflon at the time of his death. Resolution of this dispute is not necessary to decide the present issue.

arrived at the hospital, and died shortly thereafter. An autopsy revealed that Mr. McKee died of a pulmonary artery thromboembolism and bilateral pulmonary infarcts. The plaintiff believes these conditions should have been detected by Dr. Bailey on June 7th, and that accordingly both of the defendants are liable for Dr. Bailey's failure to diagnose.

III.

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Establishing domicile in a state requires both physical presence and an intention to make that state a home. *See Johnson v. Advance Am.*, 549 F.3d 932 (4th Cir. 2008). A person can have only one domicile at a time, and will keep an existing domicile until a new one is established. *See Young v. Owens*, 207 F. Supp. 519 (W.D. N.C. 1962). The Fourth Circuit has said that "the place of residence is prima facie the domicil, unless there be some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence in another place."[4] *Granite Trading Corp. v. Harris*, 80 F.2d 174, 176 (4th Cir.

---

[4] Many courts also say that there is a presumption in favor of Mr. McKee's original domicile, as opposed to a recently acquired one. *See Washington v. Hovensa LLC*, 652 F.3d 340 (3d Cir. 2011); *Ness v. Dean Witter Reynolds, Inc.*, 677 F. Supp. 861, 864 (D.S.C. 1987). However, the parties to this litigation have not cited to, and I have not discovered, any decision from the Fourth Circuit that adopts this presumption. I do

-5-

1935) (internal quotation marks and citation omitted); *see also Johnson v. Xerox Educ. Sols. LLC*, No. GJH-14-CV-15422, 2014 WL 5361302, at *2 (D. Md. Oct. 20, 2014).

The parties agree that Mr. McKee was physically present in Idaho when he died. The question I must answer is whether Mr. McKee had evidenced, at the time of his death, the intent to make Idaho his home.

The defendants argue that Mr. McKee had not evidenced the intent to stay in Idaho because he had not purchased or rented a house in Idaho, had not registered to vote in Idaho, held bank accounts in Virginia, had a Virginia driver's license, had only paid taxes in Virginia during the twelve months prior to his death, and was ultimately buried in Virginia after his death. Other courts have recognized that many of these factors are relevant to the domicile analysis. *See Torres Vazquez v. Commercial Union Ins. Co.*, 417 F. Supp. 2d 227, 234 (D.P.R. 2006).

While the defendants have cited to a number of objective factors that seemingly weigh against the idea that Mr. McKee changed domiciles, I must review the total circumstances surrounding Mr. McKee's move to Idaho. *See Duff v. Beaty*, 804 F. Supp. 332, 335 (N.D. Ga. 1992); *Hall v. Nestman*, No. 5:14-CV-00062, 2015 WL 3948158, at *5 (W.D. Va. June 29, 2015); *Frye v. S. Lithoplate,*

---

not believe it is necessary to decide whether this presumption applies, because the existence of such a presumption would not change the result in this case.

*Inc.,* No. 3:13–CV–63, 2013 WL 6246780, at *2 (N.D. W.Va. Dec. 3, 2013) ("Courts determine domicile on a case by case basis, considering all of the circumstances surrounding an individual's situation.")

In *Duff*, a Tennessee couple filed suit for medical malpractice. 804 F. Supp. at 334. The plaintiffs alleged federal diversity jurisdiction, and the doctor requested a dismissal because he had moved to Tennessee prior to the filing of the lawsuit, thereby destroying diversity. *Id*.

Numerous objective factors weighed against dismissal. For example, the doctor had not registered to vote in Tennessee, had not changed his driver's license or car registration to reflect that he lived in Tennessee, had not informed his hospital or nursing boards that he had moved, still owned a house in Georgia (his previous domicile), and even received some bills at the Georgia address. *Id.* at 336. However, the United States District Court for the Northern District of Georgia held that it needed to review the "total circumstances" surrounding the doctor's move. *Id.* at 337. Those total circumstances first showed that the doctor had taken significant steps toward changing his domicile, such as moving all of his personal belongings to Tennessee. The circumstances also showed he had moved to Tennessee after separating from his wife. *Id.* at 334-36. Thus, he had maintained his original home in Georgia so that his wife and children could live in it, and he had not changed his mailing address for certain bills because his wife

was willing to forward those bills. *Id.* at 336. He had failed to take other steps that would have clarified his intent because he did not want to publicize the separation and did not feel there was an imminent need to take those steps. *Id.* at 336-37.

A similar review of the total circumstances is necessary here. Mr. McKee and his family packed all of their belongings into a U-Haul truck and spent four days travelling to Idaho. The family relinquished their apartment in Virginia and Mr. McKee resigned from the job he held in Virginia. Upon arriving in Idaho, the family unpacked all of their possessions into Mrs. McKee's mother's home. Shortly thereafter, both of the McKees began to look for employment, and listed Idaho as their place of residence when completing employment/tax forms. At least one of these forms contains a statement, written by Mr. McKee, which evidences his belief that he had "moved" to Idaho from Virginia. (Pl.'s Br. Opp'n Def.'s Mot. Dismiss 3, ECF No. 45).

It appears Mr. McKee did not get the opportunity to change his bank account, driver's license, or voting registration before his untimely death, which occurred approximately nine days after he arrived in Idaho. While he did not purchase a house in Idaho, he moved in with his mother-in-law while he and his wife established themselves in the new state.[5] Mr. McKee planned to stay in his

---

[5] Mr. McKee's mother-in-law testified during her deposition that the couple was to pay her $300 a month to help cover utilities and provide a small rent payment. Thus,

-8-

Case 1:14-cv-00077-JPJ   Document 68   Filed 11/04/15   Page 8 of 10   Pageid#: 669

mother-in-law's home for one or two years so he could save money – a prudent plan commonly employed by young families. Given the circumstances, Mr. McKee's continued ties to Virginia do not negate his otherwise clear intent to remain in Idaho.[6] I do not believe that Mr. McKee, a man of relatively modest means, would have quit his job, packed all of his belongings, and moved across the country to start a job search in Idaho unless he intended to stay in the area indefinitely. This appears to be a circumstance where Mr. McKee's domicile changed almost "instantly" upon his arrival in Idaho. *Segen v. Buchanan Gen. Hosp., Inc.*, 552 F. Supp. 2d 579, 583 (W.D. Va. 2007).

The defendants cite to numerous factors relevant to proof of domicile in their Motion to Dismiss, but the plaintiff is not required to satisfy every imaginable factor in order to show that Mr. McKee intended to remain in Idaho. *See Rodríguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 33 (1st Cir. 2011). The factors cited by the defendants are unpersuasive given the quick nature of Mr. McKee's move, the circumstances surrounding it, and his unfortunate death. In short, while Mr. McKee did not take every step possible to eliminate his Virginia

---

while Mr. McKee had not signed a formal lease, he had incurred a rent obligation in Idaho.

[6] The defendants argue that Mr. McKee's burial in Virginia shows he did not intend to remain in Idaho. I find this argument unpersuasive. Mr. McKee spent much of his life in Virginia, and a large portion of his family was located there. In contrast, he spent only days in Idaho prior to his death. His family buried Mr. McKee in the place that was most connected to his history; this choice by his family provides little insight into how Mr. McKee imagined his future.

-9-

Case 1:14-cv-00077-JPJ   Document 68   Filed 11/04/15   Page 9 of 10   Pageid#: 670

connections, he took enough steps to make clear that he intended to remain in Idaho. Accordingly, I find that the plaintiff has established that Mr. McKee was domiciled in Idaho, and diversity jurisdiction thus exists in this case.

IV.

For the foregoing reasons, it is **ORDERED** that Defendant's Motion to Dismiss (ECF No. 41) is DENIED.

ENTER: November 4, 2015

/s/ James P. Jones
United States District Judge