# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| KAREN TAYLOR BAGHERI, ADMINISTRATOR OF THE ESTATE OF SHAWN MATTHEW McKEE, DECEASED, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14CV00077 |
| v. | ) ) | **OPINION AND ORDER** |
| DWIGHT L. BAILEY, M.D., AND APPALACHIAN EMERGENCY PHYSICIANS, | ) ) ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*S.D. Roberts Moore, Anthony M. Russell, Benjamin D. Byrd, and Andrew M. Bowman, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Plaintiff; James N.L. Humphreys, and Jimmie C. Miller, Hunter, Smith & Davis, LLP, Kingsport, Tennessee for Defendants.*

In this diversity action, the plaintiff, Karen Taylor Bagheri, Administrator of the Estate of Shawn Matthew McKee, seeks recovery for the decedent's death, which she claims was caused by the medical malpractice of the defendant, Dwight L. Bailey, M.D., employed by the defendant Appalachian Emergency Physicians. The plaintiff has moved in limine to preclude the defendants from introducing any argument, comment, or evidence at trial that would suggest that the decedent was negligent in contributing to his death. Subsequent to the plaintiff's Motion in Limine, the defendants filed a Motion to Amend their Answer to include the

defense of contributory negligence based on Mr. McKee's conduct on the night before his death. In addition, the defendants have filed a Motion in Limine requesting that the plaintiff's expert economist be prohibited from testifying at trial. For the following reasons, the plaintiff's Motion in Limine is granted in part and denied in part, while the defendants' Motion to Amend and Motion in Limine are both denied.

II.

The following facts are taken from the Complaint and the deposition excerpts submitted by the parties.

On June 7, 2013, Shawn Matthew McKee arrived at the Russell County Medical Center Emergency Department in Russell County, Virginia. Mr. McKee was suffering from, among other things, chest and back pain, shortness of breath, nausea, and a fever. Defendant Dr. Bailey examined Mr. McKee while he was in the emergency room. Dr. Bailey performed a number of diagnostic tests on Mr. McKee, and eventually concluded that Mr. McKee was suffering from acute bronchitis. Dr. Bailey released Mr. McKee from his care that night.

Shortly thereafter, Mr. McKee and his family moved to Post Falls, Idaho, and moved in with Mr. McKee's mother-in-law.

On the night of June 24, 2013, Mr. McKee began to suffer from shortness of breath. Mr. McKee discussed with his wife and mother-in-law whether he should

seek medical attention. At one point, this discussion became heated because Mr. McKee's mother-in-law felt strongly that he should go to the hospital. Ultimately, Mr. McKee decided to wait until morning.

On the morning of June 25, 2013, Mr. McKee's shortness of breath worsened. Paramedics took Mr. McKee to a nearby hospital via ambulance, but Mr. McKee became unresponsive around the time the ambulance arrived at the hospital, and he died shortly thereafter. An autopsy revealed that Mr. McKee died of a pulmonary artery thromboembolism and bilateral pulmonary infarcts. The plaintiff believes that these conditions should have been detected by Dr. Bailey on June 7th, and that both of the defendants are liable for Dr. Bailey's failure to diagnose.

### III.

### A. Plaintiff's Motion in Limine.

The plaintiff has requested that the defendants be prohibited from introducing any argument, comment, or evidence at trial that would suggest that the decedent was negligent. The plaintiff's motion is based on the fact that the defendants did not plead the defenses of contributory negligence or failure to mitigate damages in their Answer, and the argument that even if the defendants had raised those defenses, they could not succeed as a matter of law. On the second point, the plaintiff asserts that the defendants would only be able to

establish a contributory negligence defense if Mr. McKee's negligence was contemporaneous with Dr. Bailey's supposed negligence. *See Chandler v. Graffeo*, 604 S.E.2d 1, 5 (Va. 2004).

The plaintiffs have provided sufficient reason to exclude all arguments and comments suggesting that Mr. McKee was negligent. Not only did the defendants fail to allege such negligence in their original Answer, but there is no evidence that Mr. McKee committed the kind of contemporaneous negligence necessary for a contributory negligence defense under Virginia law. *See id.*

However, I cannot say that all of the evidence the plaintiff seeks to exclude is categorically inadmissible, because some of that evidence could be relevant to the issue of causation. A factual dispute in this case is whether Mr. McKee suffered from a pulmonary embolism on June 7th, or developed this condition after being examined by Dr. Bailey. Evidence regarding Mr. McKee's health and activities from the time of June 7th until his eventual death could thus potentially assist the jury in answering this question.

The plaintiff's Motion in Limine was submitted, at least in part, in an effort to prevent the defendants from referencing the events that occurred the night before Mr. McKee's death, when the decedent was encouraged to visit the hospital by his wife and mother-in-law, but ultimately refused until paramedics were called the next day. The plaintiff argues that even if the details from that night are

relevant, the probative value of that information is outweighed by its prejudicial effect, such that the evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence.

I cannot say, at this point, that the probative value of such evidence is substantially outweighed by its prejudicial effect, as required by Rule 403. Thus, I will deny the plaintiff's request in limine to exclude the evidence in question, even though I will preclude the defendants from arguing that the plaintiff's case is barred by the decedent's contributory negligence.

### B. Defendants' Motion to Amend.

The defendants' Motion to Amend requests that their original Answer be amended so that they can argue that Mr. McKee was negligent on the night before his death. The defendants argue that they did not originally plead this affirmative defense because they were not aware of Mr. McKee's negligence until late in the litigation.

As previously discussed, the plaintiff's Motion in Limine established that the defendants will not be able to successfully argue contributory negligence in this case because Mr. McKee's supposed negligence, which occurred on the night before his death, was not contemporaneous with the defendants' alleged negligence. *See Chandler*, 604 S.E.2d at 5. Therefore, allowing the defendants to

amend their Answer to include the affirmative defense of contributory negligence would serve no purpose, and the defendants' Motion to Amend is denied.

## C. Defendants' Motion in Limine.

Lastly, the defendants' have moved, in limine, for the plaintiff's expert economist, Larry A. Lynch, to be excluded from testifying at trial. The plaintiff plans to use Dr. Lynch to calculate the value of the decedent's lost income and lost services, and to determine how much of that lost income would have gone to the decedent's statutory beneficiaries.

The defendants have moved to exclude Dr. Lynch's testimony because (1) he calculated the decedent's consumption rate using Bureau of Labor statistical data, not data individualized to the decedent, and (2) he calculated the value of lost household services using the national average for such services, as opposed to averages that are specific to the region where the decedent lived.

The Federal Rules of Evidence provide that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

-6-

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The scope of the court's gatekeeping inquiry will depend upon the particular expert testimony and facts of the case." *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015). Expert testimony should be permitted if it "rests on a reliable foundation and is relevant." *Id*. (citations omitted).

Here, the defendants are effectively challenging one of the plaintiff's substantive claims for damages because the quantum of evidence necessary to support a claim is outcome determinative. Thus, the defendants' Motion in Limine creates a substantive question that must be decided pursuant to Virginia law. *See Boyd v. Bulala*, 877 F.2d 1191, 1199 (4th Cir. 1989) *certified question answered*, 389 S.E.2d 670 (Va. 1990).

Under Virginia law, every verdict in a wrongful death case shall include compensation for the reasonably expected loss of the decedent's income, along with the loss of his "services, protection, care and assistance. . . ." Va. Code Ann. § 8.01-52. Virginia law does not require "mathematical precision" in the calculation of economic damages. *Bulala v. Boyd*, 389 S.E.2d 670, 677 (Va. 1990). Instead,

> the plaintiff must furnish evidence of sufficient facts or circumstances to permit at least an intelligent and probable estimate of damages. Estimates of damages based entirely upon statistics and assumptions are too remote and speculative to meet that test. In order to form a

> reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated.

*Id.* (internal quotation marks and citation omitted).

Dr. Lynch has provided projections that attempt to quantify both the loss of support and household services that have been suffered in this case. When assessing lost support, Dr. Lynch analyzed Mr. McKee's Social Security earnings since 2003. After obtaining additional information from both personal interviews and questionnaires, Dr. Lynch projected what the decedent's income would have been if he retired at age 67, and provided a second projection that used age 70 as the retirement age. He then subtracted the amount Mr. McKee would have consumed from each year of projected income. This projected personal consumption deduction was calculated using U.S. Bureau of Labor statistics that took into account the decedent's family's income and size. The defendants challenge the consumption projection for its use of U.S. Bureau of Labor statistics, and argue that use of such general statistics cause Dr. Lynch's opinion to be merely speculative.

The defendants compare this matter to *Birge ex rel. Mickens v. Dollar Gen. Corp.*, No. 04-2531 B/P, 2006 WL 5175757, at *1 (W.D. Tenn. Sept. 25, 2006). In that case, the decedent worked at B's Quick Stop. An expert economist was asked to evaluate what the decedent's income would have been, but the economist was

-8-

Case 1:14-cv-00077-JPJ   Document 69   Filed 11/06/15   Page 8 of 11   Pageid#: 763

> reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated.

*Id.* (internal quotation marks and citation omitted).

Dr. Lynch has provided projections that attempt to quantify both the loss of support and household services that have been suffered in this case. When assessing lost support, Dr. Lynch analyzed Mr. McKee's Social Security earnings since 2003. After obtaining additional information from both personal interviews and questionnaires, Dr. Lynch projected what the decedent's income would have been if he retired at age 67, and provided a second projection that used age 70 as the retirement age. He then subtracted the amount Mr. McKee would have consumed from each year of projected income. This projected personal consumption deduction was calculated using U.S. Bureau of Labor statistics that took into account the decedent's family's income and size. The defendants challenge the consumption projection for its use of U.S. Bureau of Labor statistics, and argue that use of such general statistics cause Dr. Lynch's opinion to be merely speculative.

The defendants compare this matter to *Birge ex rel. Mickens v. Dollar Gen. Corp.*, No. 04-2531 B/P, 2006 WL 5175757, at *1 (W.D. Tenn. Sept. 25, 2006). In that case, the decedent worked at B's Quick Stop. An expert economist was asked to evaluate what the decedent's income would have been, but the economist was

not given any information as to the decedent's income history or net worth. As such, the economist assumed that the decedent had been a manager at B's Quick Stop, and performed his calculation using the average income for food service managers. The court held that this was speculative, and thus the economist's opinion was not based on sufficient facts or data.

Dr. Lynch determined Mr. McKee's projected future income using roughly ten years of the decedent's earning history and conversations he had with the decedent's wife and mother. While the personal consumption portion of Dr. Lynch's calculation may not be based entirely on individualized factors, his analysis still considers the decedent's projected income and family size, and then applies those factors to the Bureau of Labor's statistics. This is an accepted method used when calculating the personal consumption deduction. *See* 5 David L. Faigman, et al., *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 45:75 (2014-15 ed.).

Dr. Lynch's proposed testimony is different from that considered in *Birge*. The economist in that case based his opinion almost entirely on generalized data. The majority of Dr. Lynch's analysis is based on facts that are particular to the decedent. The portion that uses statistics to calculate consumption does so because it would be difficult, if not impossible, to perform that calculation with individualized data. As such, Dr. Lynch's combination of personal and statistical

data is appropriate in this case.  *See, e.g., Musick v. Dorel Juvenile Grp., Inc.*, 818 F. Supp. 2d 960, 963 (W.D. Va. 2011).

Dr. Lynch's valuation of household services is also admissible.  Dr. Lynch determined the amount of household services lost in this case by speaking to both Mr. McKee's wife and mother, and asking them how much time Mr. McKee spent doing household tasks.  While Mr. McKee's wife said that he performed roughly 30 hours of such tasks per week, Mr. McKee's mother estimated that he performed 20 hours worth of those tasks per week, so Dr. Lynch used the lower number.  He then applied that amount of time to the national average rate for household services.

The defendants argue that a particularized rate that is more specific to Lebanon, Virginia, or Post Falls, Idaho, should have been used.  The defendants have provided no case authority suggesting that such a particularized rate must be used, nor have they shown that a recognized rate for those areas even exists.  Dr. Lynch asserts that he has computed Mr. McKee's household services using the best data available.  Certainly, this computation assists the trier of fact, and appears to be the kind of analysis that would be performed by similar experts in the field.  Therefore, the defendant's Motion in Limine will also be denied.

IV.

For the foregoing reasons, it is **ORDERED** that the plaintiff's Motion in Limine (ECF No. 59) is GRANTED in part and DENIED in part. The defendants' Motion to Amend (ECF No. 63) is DENIED, and their Motion in Limine (ECF No. 51) is also DENIED.

ENTER: November 6, 2015

/s/ James P. Jones
United States District Judge