# INDEPENDENT CONTRACTOR PHYSICIAN AGREEMENT

**THIS AGREEMENT** ("this Agreement") is made and entered into on the 1st day of December, 2010, by and between **APPALACHIAN EMERGENCY PHYSICIANS**, a Virginia nonstock corporation (hereinafter referred to as the "AEP"), and **DWIGHT LAWRENCE BAILEY, MD** (hereinafter referred to as the "Physician").

**WHEREAS**, AEP provides physician staffing for the emergency departments of its hospital clients including Dickenson Community Hospital located in Clintwood, Virginia ("DCH"), Norton Community Hospital located in Norton, Virginia ("NCH"), Russell County Medical Center located in Lebanon, Virginia ("RCMC") and Smyth County Community Hospital located in Marion, Virginia ("SCCH"); and

**WHEREAS**, the Physician warrants that he/she is licensed to practice medicine in the Commonwealth of Virginia and is qualified by proper and adequate education, training and practice in the field of emergency medicine; and

**WHEREAS**, AEP desires to contract with the Physician as an independent contractor to provide medical services in the field of emergency medicine from DCH, NCH, RCMC and/or SCCH (sometimes individually, a "Hospital" and, collectively, the "Hospitals"), and the Physician desires to provide said professional services to AEP, upon the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the agreements herein contained, it is hereby mutually agreed and covenanted between the undersigned parties as follows:

## I. PROFESSIONAL SERVICES AND COVENANTS

A. <u>Location; Services; Practice Commitment</u>. The Physician shall commence performance of services hereunder effective December 1, 2010 (the "Commencement Date"). Effective the Commencement Date, the Physician shall provide emergency medicine services from the following Hospitals as mutually determined by the Physician and AEP:

☐ Dickenson Community Hospital
☐ Norton Community Hospital
☒ Russell County Medical Center
☐ Smyth County Community Hospital

Specifically, the Physician shall perform the following duties and responsibilities with respect to each Hospital to which it is assigned to perform services hereunder:

(1) <u>Coverage</u>. Provide emergency department coverage by being physically present at the emergency department of the Hospital at such times as scheduled by AEP as further described in Section I.B. below;

(2) <u>Evaluation and Treatment</u>. Evaluate, examine and treat each patient presented for care at the Hospital as further provided in Section I.H. below;

(3) <u>Supervision</u>. Supervise physician extenders as requested by AEP and, as requested by AEP from time to time, enter into written practice protocols with such physician extenders addressing supervision requirements and scope of practice matters;

(4) <u>In-House Emergencies</u>. Respond to all Hospital in-house emergencies and respond to all "codes" within the Hospital, provided there is no conflict with patient care in the emergency department of the Hospital;

PLAINTIFF'S EXHIBIT

(5) <u>Service Contracts</u>. Take all actions necessary to comply with the terms of AEP's service contract with the Hospital in providing professional services at the Hospital. Without limiting the generality of the foregoing, the Physician specifically represents and warrants that he/she will maintain all qualifications required of physician providers thereunder and the Physician shall comply with all federal, state and local laws, rules, ordinances and regulations, with the Bylaws, Rules and Regulations of the Medical Staff and with the Code of Conduct and other policies of the Hospital.

B. <u>Time and Scheduling Requirements</u>. Scheduling of the Physician's services shall be by mutual agreement between AEP and the Physician consistent with the following guidelines, which are an integral part of this Agreement:

(1) <u>Equity</u>. There will be a fair and reasonable sharing of nights, weekends and holidays. Recognized holiday periods for the purposes of scheduling are Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve, Christmas, New Year's Eve and New Year's Day. The long-term goal is to have the Physician share in a balanced schedule.

(2) <u>Requests</u>. Requests for less than minimum hours must be made forty-five (45) days or more in advance and shall be considered on a first come, first served basis.

(3) <u>Payment for Additional Hours</u>. The Physician will not be paid for any time worked beyond the scheduled shift except in the following situations: (i) when additional time has been approved by the Medical Director or Regional Director; (ii) in life threatening or serious situations involving patient care (i.e., Code Blue, Resuscitation, etc.); (iii) to provide coverage until arrival of the scheduled replacement physician.

C. <u>Medical Records; Recordkeeping; Reports</u>. The Physician shall make or cause to be made all reports required by the Virginia Department of Health and other governmental agencies regarding the professional medical services rendered by the Physician in the Hospital. The Physician shall be responsible for maintaining accurate and complete records and files of all required information pertaining to the diagnosis and treatment of any patients of the Hospital. Without limiting the foregoing, the Physician shall timely and accurately complete patient medical records, including handwritten notes, hospital dictation system and/or QualCharts®, and the Physician shall comply with the Medical Staff Bylaws of each Hospital with respect to timely completion of medical records.

D. <u>Quality of Care</u>. The Physician shall perform the services described herein in a competent, ethical and professional manner and provide services which are at all times in strict conformance with currently approved methods and practices in the Physician's specialty.

E. <u>Government Programs</u>. The Physician acknowledges that the Physician has never been suspended, excluded, barred or sanctioned by Medicare or any other state or federal healthcare programs (as such term is defined in 42 U.S.C. §1320a-7b(f)), nor has Physician ever been convicted of a criminal offense related to healthcare. The Physician shall notify AEP immediately if any such action is proposed or taken against the Physician or if the Physician becomes the subject of an investigation that could lead to such action.

F. <u>Third Party Reimbursement Programs; Quality Improvement and Utilization Review</u>. In consideration of the compensation paid to the Physician hereunder, the Physician hereby authorizes AEP and/or its designated agent to negotiate and administer provider contracts with third party payors of health care services such as HMO's, PPO's, self-funded employer groups, indemnity insurance carriers and governmental reimbursement programs. Toward that end, the Physician agrees to execute the Power of Attorney as required by AEP and shall timely and accurately complete and submit to AEP or its designated agent when requested, third party payor enrollment applications and forms and credentialing information. The Physician shall cooperate with AEP, each Hospital and their designated agents in the

Case 1:14-cv-00077-JPJ Document 99-3 Filed 12/04/15 Page 2 of 9 Pageid#: 2213

performance of quality improvement and utilization review evaluations with a goal of improving utilization of medical resources without compromise to patient care. The parties hereto agree that there is a need to avoid overutilization of medical resources. Nevertheless, nothing in the foregoing is intended to limit or prevent in any way the exercise of the Physician's independent professional judgment regarding the manner or methods of diagnosing and treating patients of the Hospital as further described in Section I.H. below.

      G.    <u>Confidential Information</u>. Except as appropriate for the purpose of providing health care for the Hospital's patients, the Physician shall not at any time either during the term of this Agreement or thereafter, directly or indirectly, use or disclose to any party other than directors, officers or employees of AEP or of the Hospital, any medical or other confidential information relating to patients or operation of AEP or the Hospital that is learned or obtained by the Physician in performing services for AEP, including, but not limited to the terms and conditions of this Agreement and any business or trade secrets, operating procedures, patient lists or other patient information, statistical data, contractual information, pricing information, insurance information, marketing information and other similar information. If the Physician shall be compelled by a subpoena or other legal process or order to disclose such information, the Physician may do so after first notifying AEP and the applicable Hospital so they may seek a protective order.

      H.    <u>Noninterference with Treatment Decisions</u>. Notwithstanding anything in the foregoing to the contrary, the parties acknowledge that, pursuant to the laws of the Commonwealth of Virginia, AEP cannot restrict or interfere with medically appropriate diagnostic or treatment decisions. Any activities or judgments which constitute medically appropriate diagnostic or treatment decisions shall be solely and exclusively within the discretion and professional judgment of the Physician, and AEP hereby disclaims in full any right of AEP to restrict or interfere with the Physician's judgment regarding such decisions. The parties further acknowledge that the foregoing shall not prevent AEP from: (1) promulgating general rules governing the rendering of medical care to patients; (2) promulgating specific rules for the purpose of utilization and peer review; or (3) relieving the Physician of the care of an individual patient or of all patient care when, in the opinion of AEP, inappropriate care is being rendered by the Physician or the Physician is not observing such general and specific rules.

      I.    <u>Compliance with HIPAA</u>. During the term of this Agreement and thereafter, the Physician shall at all times comply with the patient information and privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the final regulations promulgated thereunder, as amended from time to time, as well as any and all Bylaws and rules, regulations, directives and/or policies of AEP, pertaining thereto, as amended from time to time. Consistent with the requirements of HIPAA, the Physician shall: (1) appropriately access and disclose patient information; (2) appropriately use the information systems of AEP and each Hospital; (3) use appropriate safeguards to prevent unauthorized access to or disclosure of patient information; (4) protect against any reasonably anticipated threats or hazards to the security or integrity of health information and unauthorized uses and disclosures of patient information; and (5) comply with other applicable requirements of the final regulations. Further, consistent with the requirements of HIPAA, the Physician shall not: (a) allow another individual to use the Physician's user identification, password, token, or biometric information; or (b) inappropriately access or disclose patient information. The Physician understands that the unauthorized access to or disclosure of patient information may result in criminal penalties, civil penalties, notification of licensing boards, and notification of state and federal agencies.

## II.   PHYSICIAN COMPENSATION AND BILLING

      A.    <u>Compensation</u>. AEP shall pay to the Physician a rate for each hour the Physician provides professional services, which rate by Hospital location is set forth in the Compensation Addendum attached hereto and incorporated herein, as may be amended by the parties in writing from

time to time. AEP also shall pay to the Physician such additional fees set forth in the Compensation Addendum. Except to the extent otherwise provided in the Compensation Amendment, the compensation shall be paid monthly on or about the 20th of each month, in arrears. The Physician will get a 1099 on a calendar year annual basis evidencing the total amount paid. It is the obligation of the Physician to notify AEP of any changes in the schedule, in advance of any shift, to enable AEP to accurately compensate the Physician. AEP shall have no liability for any expenses or charges incurred by the Physician in performance of this Agreement other than as described herein. The Physician hereby authorizes AEP to set off and withhold from such compensation any sums due AEP from the Physician.

      B.    <u>No Employee Benefits</u>. As further provided in Section I.C. below, the Physician shall be an independent contractor of AEP. Accordingly, the Physician shall not be considered, under the provisions of this Agreement or otherwise, as having employee status or as being entitled to participate in any employee insurance or benefits plans, arrangements or other benefits of any nature that may be provided by AEP or any Hospital for its employees (collectively, "Benefits"). As an independent contractor, that Physician expressly and knowingly waives any benefits afforded to employees of AEP or the Hospitals. Notwithstanding the foregoing, the Physician, at the Physician's own cost and expense, may elect to participate in the health and dental insurance plans and physician self-directed IRA that AEP makes available to its independent contractor physicians in accordance with their terms and conditions. If and to the extent the Physician elects to participate in said plans, AEP shall be entitled to deduct any sums determined due for the same consistent with the terms of said plans.

      C.    <u>Independent Contractor</u>. AEP and the Physician acknowledge that, in performing services under the terms of this Agreement, the Physician is functioning as an independent contractor. As such, the Physician is not an employee of AEP. AEP shall not withhold any taxes and the Physician shall be independently responsible for all taxes and insurance and thereby shall indemnify AEP for any and all liability therefore. The Physician shall not have any claim against AEP under this Agreement for vacation, sick leave, retirement benefits, workers' compensation, disability or unemployment benefits, or employee benefits of any kind.

      D.    <u>Billing</u>. All professional fees generated by the services performed by the Physician pursuant to this Agreement shall be considered AEP's revenue. The Physician shall, and hereby does, assign to AEP or its designated billing agent, all of the rights to, and collection of, charges and other fees payable for services the Physician renders pursuant to this Agreement, and the Physician does so without any reservation of rights or set-off by the Physician. Upon AEP's request, the Physician shall execute any such additional documentation reasonably required to further evidence such assignment. Accordingly, AEP or its designated billing agent shall be solely entitled to, and responsible for, all billing and collection; except that the Physician shall in all instances be responsible for the accuracy and completeness of the information the Physician furnishes for purposes of billing and collection and the Physician represents to AEP that all such information shall be accurate and complete, which representation shall survive any termination of this Agreement. Further, the Physician agrees to cooperate and assist AEP and its agents in billing and collection of such charges.

## III.   TERM

This Agreement shall be in effect for a period of one (1) year from the Commencement Date. It shall automatically renew for additional one (1) year terms unless either party provides the other party with written notice of non-renewal at least one hundred twenty (120) days prior to expiration of the then current term.

## IV.   TERMINATION

      A.    <u>Loss of Licenses</u>. The Physician shall maintain a currently valid and unrestricted license to practice medicine in the Commonwealth of Virginia, with no reprimands or censures on record form

546159v1    4
Case 1:14-cv-00077-JPJ   Document 99-3   Filed 12/04/15   Page 4 of 9   Pageid#: 2215

the state licensing board, and a current DEA license and corresponding state license to prescribe controlled substances. If at any time during the term of this Agreement any of the above described licenses is terminated and such license is not reinstated without limitations or restrictions within five (5) days after such termination, this Agreement shall terminate effective on the date of such licensure termination.

    B.    <u>Death; Disability; Loss of VISA; Loss of Insurance; Crimes; Substance Abuse; Breach; Serious Misconduct</u>. This Agreement shall also terminate effective on the date of any of the following events: (1) Death of the Physician; (2) Disability of the Physician as reasonably determined by AEP consistent with applicable law; (3) If the Physician is not a citizen of the United States, failure to obtain and maintain an appropriate VISA; (4) Cancellation or nonrenewal of the malpractice insurance coverage maintained by AEP for the Physician, if such cancellation or nonrenewal is the result of actions or omissions of the Physician; (5) Conviction of the Physician for commission of a felony; (6) Reasonable suspicion by AEP that the Physician is dependent upon or abusing alcohol or drugs; (7) Exclusion or suspension of the Physician from Medicare or any other federal health care program, or failure to abide by the terms of a Hospital's Code of Conduct or other policies; (8) Breach or nonperformance of the professional service obligations and other covenants of the Physician under this Agreement, other than those obligations specifically identified in Sections IV.A and IV.B, if such breach or nonperformance is not corrected within thirty (30) days after written notice to the Physician by AEP. Such written notice shall be by certified mail to the last known address of the Physician; or (9) Serious misconduct by the Physician. For purposes of this Section IV.B., serious misconduct includes, but is not limited to, the following: (i) sexual harassment by the Physician of any patient of the Hospital or of any employee, independent contractor, officer, director or agent of AEP or any Hospital; (ii) theft, embezzlement, misappropriation of funds or other financial misconduct by the Physician with respect to AEP or any Hospital; (iii) abusive behavior by the Physician toward any patient or toward any employee, officer, director or agent of AEP or any Hospital; and (iv) inappropriate or unprofessional criticism by the Physician to third parties of the professional skills of any other physician under contract with AEP to work in the Hospital.

    C.    <u>Termination Without Cause by Either Party</u>. Either party may terminate this Agreement, without cause, by giving written notice of termination to the other party at least one hundred twenty (120) days prior to the intended effective date of termination. If either party terminates this Agreement pursuant to this Section C. during the initial one (1)-year term, the parties shall not contract with each other for the same services or similar services until the expiration of the remaining period of the initial one (1) year term.

    D.    <u>Termination of Hospital Membership/Privileges</u>. The Physician agrees that, upon termination of AEP's service contract with a Hospital or upon termination of this Agreement pursuant to this Section IV, the Physician's Medical Staff membership and emergency department clinical privileges shall, either automatically or at the option of each Hospital as provided in the AEP/Hospital service contract, terminate without the right to a hearing and appellate review under the fair hearing procedures set forth in the Medical Staff Bylaws. Notwithstanding the foregoing, in the event that the Physician has or will establish a private primary care practice in the Hospital's service area, the parties acknowledge that the Physician may obtain or maintain Medical Staff membership and clinical privileges appropriate to the treatment of such patients. The parties acknowledge and agree that the termination of this Agreement for any reason or the Physician ceasing to be a contractor of AEP shall not be deemed "an adverse professional review recommendation", or "an adverse professional review action", as described in the Medical Staff Bylaws. The Physician shall have no rights to, and hereby waives, notice, hearing and/or other "due process" rights accorded to members of the Medical Staff with respect to reduction or termination of privileges. If any provision of this Agreement conflicts with the Medical Staff Bylaws, the terms of this Agreement shall control.

E.  Cessation of Obligations; Hospital Property. Upon termination of this Agreement, all obligations of the parties shall cease, except the Physician shall be paid the compensation described in Section II.A. through the effective date of termination and each party shall remain bound by those provisions of this Agreement that by their nature or express terms continue in effect following the effective date of termination. All cash collected by AEP after the effective date of termination shall be retained by AEP and the Physician shall not be entitled to any compensation therefrom. All tangible and intangible assets in and of AEP including, but not limited to, accounts receivable and patient records and files, are the exclusive property of AEP, and the Physician has no ownership interest in such assets during or following the termination of this Agreement.

## V. PROFESSIONAL MALPRACTICE INSURANCE

A.  Insurance. AEP shall provide malpractice insurance for the Physician with minimum limits of ███████ occurrence and ███████ annual aggregate, which shall cover all claims arising from the Physician's services rendered pursuant to this Agreement, regardless of when the claim is made or brought. AEP shall provide such coverage through a Full-Time-Equivalent Rated Group Policy (commonly referred to as a "Slot Policy") through State Volunteer Mutual Insurance Company ("SVMIC"). Notwithstanding the foregoing, AEP has the sole and exclusive right to change the insurance policy or provider, so long as the coverage limits set forth hereunder are not reduced, and in such event, AEP will provide an Extended Reporting Endorsement (commonly referred to as "tail coverage") covering the services that the Physician renders during the term of this Agreement, regardless of when the claim is made or brought. AEP shall notify the Physician in the event of any change in the insurance policy or provider. The cost of such malpractice insurance coverage shall be paid by AEP. The Physician acknowledges that such malpractice insurance coverage shall apply only to services rendered by the Physician pursuant to this Agreement.

B.  Annual Risk Management Seminar. So long as AEP maintains the Physician's malpractice insurance through SVMIC, the Physician shall annually complete risk management educational training approved by SVMIC.

## VI. MISCELLANEOUS

A.  Compliance with Federal Anti-Kickback and Physician Self-Referral Statutes. Notwithstanding any unanticipated effect of any of the provisions herein, no party intends to violate the federal Anti-Kickback Statute and/or the federal Physician Self-Referral Statute, as such provisions are amended from time to time. Accordingly, the parties acknowledge that, although the Physician is obligated to provide emergency medical services for the benefit of the community as specified in this Agreement, there is no obligation of the Physician to refer patients to AEP or any other health care provider affiliated with AEP, nor any intent to influence the judgment of the Physician regarding where the Physician's patients receive health care services. The parties intend that this Agreement meet the requirements of: (a) the personal services and management exception to the federal Anti-Kickback Statute which is set forth in 42 C.F.R. Section 1001.952(d), and (b) the fair market value exception to the Physician Self-Referral Statute which is set forth in 42 C.F.R. 411.357(l). This Agreement shall be construed consistent with compliance with such statutes and regulations. The payments to the Physician hereunder are fair market value for the services rendered based upon arm's length bargaining and the value of similar services in the community. Such payments are intended solely as compensation for the medical services personally performed by the Physician under this Agreement.

B.  Medicare Recordkeeping. In recognition of the provisions of (v)(1)(I) of Section 1861 of the United States Social Security Act and its implementing regulations at 42 C.F.R. Section 420.302, the Physician agrees, for a period of four (4) years following the rendering of services under this Agreement, to make available, upon written request, to the Secretary of the Department of Health and Human Services, the Comptroller General of the United States, or any of their duly authorized representatives, the

contract, books, documents, and records necessary to certify the nature and extent of the costs of the services provided under this Agreement. The Physician further agrees that if the Physician should execute a permissible subcontract with a related organization for the performance of services under this Agreement, the Physician shall require such subcontract to contain a similar provision requiring the organization to make available the contract, books, documents, and records relating to those services as set forth above. In the event that such a request is made for said books, documents, or records, the Physician shall notify the President of AEP regarding the release of such information.

   C. <u>Entire Agreement; Amendment</u>. This Agreement, including each Addendum hereto, constitute the entire agreement of the parties and expressly supersedes all other agreements and understandings between the parties, whether written or oral. This Agreement may not be terminated, amended or discharged orally. Any alteration or modification of the provisions to this contract for professional services shall not be effective unless reduced to writing and executed by the parties.

   D. <u>Assignment</u>. The services provided hereunder are unique and may not be assigned or delegated by the Physician to any other party without the prior written consent of AEP. AEP may, without the consent of the Physician, assign this Agreement to any corporation under common ownership or control with AEP.

   E. <u>Governing Laws; Headings; Severability</u>. This Agreement is governed by and shall be construed in accordance with the laws of the Commonwealth of Virginia. Section and paragraph headings are for convenience of reference only and shall not be used in the interpretation of this Agreement. The terms and provisions of this Agreement are severable, and should any clause or provision hereof be unenforceable or be declared invalid for any reason whatsoever, this Agreement shall be construed and read as if such invalid or unenforceable clause or provision were omitted.

  **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and date first above written.

"Physician"              "AEP"
                      **APPALACHIAN EMERGENCY PHYSICIANS**

_____   By: _____
*(Signature)*                C. Steven Kilgore, Authorized Agent

Dwight Lawrence Bailey, MD
*(Printed or typed name of Physician)*

☒ Form W-9 Submitted to AEP

546159v1             7

Case 1:14-cv-00077-JPJ  Document 99-3  Filed 12/04/15  Page 7 of 9  Pageid#: 2218

# COMPENSATION ADDENDUM
# INDEPENDENT CONTRACTOR PHYSICIAN AGREEMENT

THIS COMPENSATION ADDENDUM (the "Compensation Addendum") is made and entered into effective December 1, 2010, by and between **APPALACHIAN EMERGENCY PHYSICIANS** ("AEP") and the below-named physician (the "Physician") to supplement and modify the terms of that certain Independent Contractor Physician Agreement (the "Agreement") executed by the parties on the same date hereof and to which this Compensation Addendum is attached and incorporated therein as if fully set forth therein.

<u>Time and Hourly Fees</u>. Physician shall schedule, on an annual average, the following hours per month at each of the Hospitals:

0   Dickenson Community Hospital
0   Norton Community Hospital
0-12+   Russell County Medical Center
0   Smyth County Community Hospital

As compensation for such services, AEP shall pay to the Physician the below dollar rate per hour applicable to the location of the Physician's services:

per hour at Dickenson Community Hospital, Clintwood, Virginia.
per hour at Norton Community Hospital, Norton, Virginia.
per hour at Russell County Medical Center, Lebanon, Virginia.
per hour at Smyth County Community Hospital, Marion, Virginia.

<u>Additional Holiday Fees</u>. In addition to the hourly fees established above, AEP shall pay to the Physician an additional fee of                            for each twelve (12)-hour shift the Physician works on Easter, Memorial Day or Labor Day and an additional fee of                            for each twelve (12)-hour shift the Physician works on July 4th, Thanksgiving, Christmas Eve, Christmas Day, New Years Eve or New Years Day.

<u>Contingent Performance Incentive Fees</u>. At the end of each calendar quarter, AEP will evaluate the performance of AEP emergency physicians at the Hospitals during the quarter with respect to certain performance metrics to determine, in AEP's sole discretion, whether those metrics were met. If AEP determines that the performance metrics for the quarter were met, then, subject           onditions set forth herein  AEP shall pay an additional fee to the Physician in an amount up to                     multiplied by the number of hours worked by the Physician at the Hospitals during the quarter. As conditions to the Physician's right to receive any said performance fee, (i) the Physician must have completed risk management educational training approved by SVMIC during the previous twelve (12) months as required under Section V.B of the Agreement, and (ii) the Agreement must have been in effect on the last day of said quarter, having not been previously terminated or expired without renewal. AEP shall pay such performance fee, if any, to the Physician within forty-five (45) days following the end of the quarter. AEP shall have sole right and authority to establish the performance metrics for purposes of this Agreement and may modify them from time to time. AEP shall establish and disclose the initial performance metrics to the Physician and its other emergency physicians by the Commencement Date and will notify them of any changes in the performance metrics prior to the quarter for which the changes become effective.

*[Remainder of page intentionally left blank. Signature page follows.]*

"Physician"

_____
*(Signature)*

Dwight Lawrence Bailey, MD
*(Printed or typed name of Physician)*

"AEP"
**APPALACHIAN EMERGENCY PHYSICIANS**

By: _____
C. Steven Kilgore, Authorized Agent